FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA** 99 APR 12 AM 9: 15
**SOUTHERN DIVISION**
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **BOBBY LEE KING**, | ] | |
| Plaintiff, | ] | |
| vs. | ] | CV 97-N-2849-S |
| **JIM WALTER RESOURCES, INC.**, | ] | |
| Defendant. | ] | **ENTERED** |

**Memorandum of Opinion**   APR 1 2 1999

### I. Introduction

In this action, Bobby Lee King brings suit against his former employer Jim Walter Resources, Inc. (hereinafter "JWR"), alleging racial discrimination and retaliation pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Specifically, King claims that JWR refused to transfer him to the evening shift, refused to provide him with transportation to his home, refused to accept a medical excuse for work days missed, denied him sick and accident benefits, suspended him for two days, refused to allow him to take his 4th of July holiday early, refused to allow him vacation days, and permanently discharged him on the basis of his race and/or in retaliation for filing an EEOC charge.

This matter is presently before the court on JWR's motion for summary judgment, filed October 30, 1998. The issues have been briefed by JWR. However, King has failed to respond to JWR's motion for summary judgment and failed to address the facts submitted by JWR pursuant to Exhibit D of this court's Initial Order. Due to this failure, the court has



deemed these facts undisputed.[1] *See Initial Order*, January 7, 1998; *see also FTC v. Febre*, 128 F.3d 530, 535-36 (7th Cir. 1997). Because King is now prosecuting this case *pro se*, however, the court has also carefully studied the evidence and has assured itself that the defendant's version of the facts is amply supported by the evidence. Upon due consideration, the motion will be granted.

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

---

[1] These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the nonmovant has properly responded to a motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very

3

close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. The McDonnell Douglas Framework

This case involves the application of Title VII of the Civil Rights Act and 48 U.S.C. § 1981 to claims of racial discrimination. Plaintiff seeks to establish his claims based largely on circumstantial evidence, so the familiar framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs this court's inquiry.

Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a claim based on circumstantial evidence has the burden of establishing a *prima facie* case of discrimination. "Establishment of the prima facie case in effect creates a presumption that

4

the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring the defendant to articulate some "legitimate, nondiscriminatory reason" for the allegedly discriminatory employment action. *Id.* "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original).

The plaintiff may prove that the defendant intentionally discriminated against him "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein*

5

*v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). However, "'to withstand a defendant's motion for summary judgment, a plaintiff has to do more than establish a prima facie case and deny the credibility of defendant's witnesses.'" *Howard v. BP Oil Co.*, 32 F.3d 520 (11th Cir. 1994) (quoting *Brown*, 939 F.2d at 950). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). Plaintiff must instead "produc[e] sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable."[2] *Howard*, 32 F.3d at 526.

If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). Because of the difficult factual questions involved in assessing "an employer's true motivations," once the plaintiff has presented evidence raising a question about those motivations summary judgment is ordinarily inappropriate. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If evidence in the record "demonstrate[s] 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's preferred legitimate

---

[2] In other words, a defendant can carry its initial burden on summary judgment on the pretext issue by presenting extensive proof to support its legitimate nondiscriminatory reason. If the defendant can show that its preferred reason was the real reason, it need not prove a negative by showing that the plaintiff cannot prove pretext. Pretext and a legitimate reason are, after all, two sides of the same coin. Proof of one disproves the other.

reasons for its action that a legitimate factfinder could find them unworthy of credence,'" the final assessment of the employer's motivation must be left to the jury. *Combs*, 106 F.3d at 1538.

## IV. Discussion

As noted earlier, King claims that JWR took various adverse employment actions against him on the basis of his race. Since King alleges disparate treatment, in order to establish a *prima facie* case he must demonstrate that (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse job action; and (4) his employer treated similarly situated employees outside the protected class more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1555 (11th Cir. 1997).

It is undisputed that King is a member of a protected class. For purposes of this opinion, the court will also assume that King was qualified for his position and that he was subjected to adverse employment actions by JWR. The fourth prong of plaintiff's *prima facie* case, however, is absent with regard to each of his allegations. As demonstrated below, King cannot show that JWR treated him differently from other similarly situated employees. For this reason, defendant's motion for summary judgment will be granted.[3]

King's first claim is that JWR refused to transfer him to the evening shift after he had difficulty staying awake. King relies solely on the statement of Larry Green, another JWR employee, who King claims told him that Green was allowed to transfer from the night shift to the evening shift because Green had trouble staying awake. Aside from the fact that this

---

[3] This does not mean, of course, that JWR did not in fact discriminate against King. But this court must deal in evidence, in what can be proven. As a result of his own failure to respond to JWR's motion for summary judgment, King has not raised an inference of discrimination in the present case.

7

evidence is hearsay, according to the record, Green was not similarly situated to King. According to JWR policy, shift transfers are only granted if there is an opening on the shift to which the employee is transferring. *Affidavit of Rodger Armbrester* ¶ 2. King admits that there was no opening on the evening shift when he requested a shift transfer. JWR produced documented evidence that when Green was transferred from the night shift, there was an opening on the evening shift. *Deposition of Bobby King,* Defendant's Exhibit 5. Since King has produced no evidence to refute JWR's documentation of this event, the court finds that Green and King were not similarly situated.

Second, King claims that JWR, knowing that King was in an unfit state to drive, refused to provide him with transportation to his home from work. To support this claim of disparate treatment, King relies on a rumor that another employee at JWR had a nervous breakdown on the job and was provided transportation. This claim is based on hearsay and gossip. Moreover, King does not dispute the fact that transportation was offered to him by JWR and that he refused to accept it. *Deposition of Keith Walden* at 60-62; *Deposition of Bobby King* at 136-38; 144-45. Because it is undisputed that JWR did not refuse to provide King with transportation, this claim has no basis in law or fact.

Third, King claims that JWR, on two occasions, refused to accept a medical excuse for work days missed. The first such incident is alleged to have taken place in June of 1995. King left work on June 8, 1995 and returned to work on June 27, 1995. King produced a medical excuse for his absences from June 14- 27, but did not produce a medical excuse for his absences from June 9-13. After determining that King had missed several days of work with no excuse, JWR suspended King for 5 days. The second incident is alleged to

8

have taken place in May of 1996. King missed work on May 17, because of burns he claims to have suffered. When King returned to work, JWR refused to accept his medical excuse because on the same night King missed work, King's supervisor saw King sleeping in his car two hours after King's shift started. Moreover, King admits to being in his car that night. *Deposition of Bobby King* at 216-17. There is simply no evidence in the record to support the proposition that JWR's decision to refuse King's medical excuses under these circumstances was in any way motivated by race, or that any other employee was treated differently.

Fourth, King claims that JWR denied him sick and accident benefits on the basis of his race. Under JWR's policy, an employee must file for sick and accident benefits within 21 days of the triggering medical condition. *Deposition of Bobby King* at 161-62. King did not file for these benefits within the 21 day period. Although King claims that another white employee filed for sick and accident benefits after the 21 day period and was awarded benefits, JWR produced evidence that this employee in fact did file within the 21 day period and was originally denied benefits because of a clerical error. *Affidavit of Rodger Armbrester* ¶ 5-7. Once the clerical error was corrected, the employee was awarded benefits. King has therefore failed to establish the existence of a similarly situated comparator.

King's fifth claim is that JWR suspended him for two days on the basis of his race. On September 19, 1995, King was suspended for two days. Under JWR policy, an employee is labeled an "irregular worker" if he or she misses six days within a 180 day period without any excuse. JWR labeled King an "irregular worker" on March 17, 1995 as a result of six

9

unexcused absences. Under JWR policy, if an "irregular worker" misses another day with no excuse he or she receives a warning letter, and the next unexcused absence results in a two day suspension. King had another unexcused absence on May 24, 1995, and received a warning letter on May 25. Thereafter, King missed work with no excuse on September 19, 1995, and was suspended pursuant to JWR's documented policy. *Deposition of Keith Walden* at 48. King has not suggested that any employee was treated differently under the policy, or provided evidence which gives rise to an inference of discrimination under these circumstances.

Sixth, King claims that JWR refused to allow him to take his 4th of July holiday early on the basis of his race. On September 19, 1995, King could not make it to work as scheduled because of car trouble. King called JWR sometime after his shift started that day and requested to take his 4th of July holiday early in order to prevent an unexcused absence. JWR refused this request because under JWR policy, an employee must make such a request before the employee's shift has started. *Deposition of Bobby King* at 120, Defendant's Exhibit 6. King has not suggested that any other employee was treated differently. Although King claims that a past supervisor once allowed him to make such an arrangement, this fact alone does not tend to prove that the decision was based in any way on race.

Seventh, King claims that JWR refused to allow him vacation days on the basis of his race and/or in retaliation for filing a EEOC charge. King maintains that JWR denied him a two-week vacation in 1995. However, the undisputed evidence shows that King was paid his two-week vacation in 1995. *Affidavit of Rodger Armbrester* ¶ 10.

Finally, King claims that JWR permanently discharged him on the basis of his race and/or in retaliation for filing an EEOC charge. The undisputed evidence makes clear that King missed two consecutive work days without an excuse. Assuming that King was discharged[4], JWR's collective bargaining agreement clearly allows the company to terminate its employees for missing consecutive days without excuse. *Deposition of Rodger Armbrester* at 35-36. Since King has not alleged that the policy was applied differently to other employees who committed the same offense, he cannot state a prima facie case.

## VI. Conclusion

Based on the evidence of record, the court concludes that plaintiff has failed to establish a *prima facie* case of racial discrimination. Accordingly, JWR's motions will be granted. The court will enter an appropriate order in conformity with this opinion.

Done, this 9th of April, 1999.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

---

[4] JWR claims that King resigned.